IN THE UNITED STATES DISTRICT COURT **FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

99 JUN 10 PM 1: 51

*Robert Manuel*
CLERK-SANTA FE

MANUEL MARTINEZ, on behalf of
himself and others similarly situated,

  Plaintiff,

vs.           No. CIV 96-1031 MV/JHG

ALLSTATE INSURANCE COMPANY.

  Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Allstate Insurance Company's Motion for Summary Judgment and/or Partial Summary Judgment, filed June 22, 1998 **[Doc. No. 85]**, Defendant Allstate Insurance Company's Motion to Strike Affidavit of James A. Hall, III, filed July 21, 1998 **[Doc. No. 98]**, Plaintiff's Cross-Motion for Summary Judgment on the Issue of Stacked Medical Payments Coverage, filed July 30, 1998 **[Doc. No. 103]**, Plaintiff's Cross-Motion for Summary Judgment on the Issue of Defendant Allstate's Bad Faith, filed July 30, 1998 **[Doc. No. 107]**, Plaintiff's Cross-Motion for Summary Judgment on the Issue of Stacked Uninsured Motorist Coverage, filed July 30, 1998 **[Doc. No. 111]**, Plaintiff's Motion in Limine to Exclude the Testimony of Stanley Frost and Brief in Support of the Motion (Served July 30, 1998), filed September 8, 1998 **[Doc. No. 118]**, Plaintiff's Objections to Magistrate Order on the Motion to Compel Defendant Allstate to Answer Interrogatories (Magistrate's Order Was Filed 09/18/98), filed October 5, 1998 **[Doc. No. 130]**, and Plaintiff's Objections to the Magistrate's Order on the Motion to Compel Defendant Allstate to Produce Documents (Magistrate's Order Was Filed 09/18/98), filed

October 5, 1998 **[Doc. No. 131]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed finds, as set out below, that some of these motions are well taken and will be **granted**, while others will be **granted in part**. In addition, the motion to exclude the testimony of Stanley Frost will be **dismissed as moot**.[1]

## Background

In the incessant tug-of-war between insurers and insureds, *see Lopez v. Foundation Reserve Ins. Co.*, 646 P.2d 1230 (N.M. 1982); *Jimenez v. Foundation Reserve Ins. Co.*, 757 P.2d 792 (N.M. 1988); *Sanchez v. Herrera*, 783 P.2d 465 (N.M. 1989); *Padilla v. Dairyland Ins. Co.*, 787 P.2d 835 (N.M. 1990); *Vigil v. California Casualty Ins. Co.*, 811 P.2d 565 (N.M. 1991); *Allstate Ins. Co. v. Stone*, 863 P.2d 1085 (N.M. 1993); *Rodriguez v. Windsor Ins. Co.*, 879 P.2d 759 (N.M. 1994); *Ashe v. First Nat. Ins. Co.*, No. CIV 94-405 (D. N.M. 1995); *Shope v. State Farm Ins. Co.*, 925 P.2d 515 (N.M. 1996); *Weekley v. State Farm Mut. Auto. Ins. Co.*, No. CIV 96-296 (D. N.M. 1997), this Court is called, sitting in diversity in this removal action, to resolve another stacking controversy. Stacking is the aggregation of certain insurance coverages when more than one automobile is covered under a policy. *Lopez*, 646 P.2d at 1231.

The facts necessary for a determination of this matter are not substantially in dispute. Moreover, for the cross motions for summary judgment neither party argues that a genuine issue of material fact exists.

Plaintiff Mr. Manuel Martinez sustained injuries in a July 20, 1995 accident while riding a non-owned motorcycle, and while insured under a policy which his parents, Cecilia and Victoriano

---

[1] The Court was saddened to learn that former New Mexico Chief Justice Frost has recently passed away.

Kreuser's affidavit, Allstate changed its premium structure. Where Allstate had previously charged a separate UM premium for each vehicle, Allstate now charged one lump-sum premium per policy. Allstate avers that it did so for actuarial reasons, and argues that although the lump-sum premium is greater when an insured has more than one car on a policy, it fundamentally remains one premium for all cars. Allstate explains that the larger premium would remain the same regardless of the number of cars beyond the second an insured added to a policy. With this exclusionary language and single premium, then, Allstate sought to ensure that it would not be obligated to stack UM coverage in New Mexico.

In 1993 the New Mexico Supreme Court, answering a question which this Court had certified, held in *Stone* that the exclusionary language Allstate had introduced in its policy was internally inconsistent or irreconcilable with other wording in the policy. *Stone*, 863 P.2d at 1087-88. Construing the policy "strictly against the insurer and liberally in favor of the insured," *id.*, 863 P.2d at 1088, the court held that the Stones could stack their coverage on all four of their vehicles. *Id.* The *Stone* court expressly declined to answer any other questions in the certification which specifically involved Allstate's premium structure. *Id.*

In response Allstate promptly issued an amendatory endorsement, effective on the policies' renewal dates, in an attempt to circumvent the *Stone* holding and avoid further stacking of UM coverage. Although involving different insureds, then, in many respects this case takes up where *Stone* left off.

The amendatory endorsement that responded to *Stone* was labeled AU2207-1, and stated:

I.    **Combining Limits Of Two Or More Autos Prohibited**
      If **you** have two or more **autos** insured in **your** name and one of these
      *autos* is involved in an accident, only the coverage limits shown on

4

magistrate judge's discovery rulings. Allstate has filed a motion seeking to exclude the affidavit of Mr. Martinez's expert Mr. James Hall.

Because its outcome affects the Court's consideration of the dispositive motions, the Court first turns to the motion to strike the affidavit of Mr. James Hall.

I.      Allstate Insurance Company's Motion to Strike the Affidavit of James A. Hall, III.

In his response to Allstate's motion for summary judgment, Mr. Martinez included as an exhibit an affidavit by former insurance executive Mr. James Hall. Mr. Hall prepared that affidavit on behalf of the defendants in *Stone*. Allstate argues in this motion that Mr. Martinez has improperly used Mr. Hall's affidavit because he did not identify Mr. Hall as an expert witness, Mr. Hall did not provide a report as required in Fed. R. Civ. P. 26(a)(2)(A), and Allstate has not had an opportunity to depose Mr. Hall since discovery has closed. Mr. Martinez does not deny that he failed to identify Mr. Hall as an expert. Mr. Martinez argues, however, that because Mr. Hall filed his affidavit in this Court in *Stone*, the Court can now take judicial notice of its contents.

Judicial notice is not appropriate under the circumstances. Mr. Martinez suggests that he submitted the Hall affidavit to help explain arcane insurance terminology, citing *In Re New America High Income Fund Securities Litigation*, 834 F. Supp. 501, 508 (D. Mass. 1993), *aff'd in part, rev'd in part*, 36 F.3d 170 (1st. Cir. 1994), for the proposition that where an affidavit offers useful explanations and speaks to background matters which are not in dispute judicial notice is possible. Mr. Hall's affidavit does discuss loss severity and loss frequency, terms that Allstate has introduced into this case. However, Mr. Martinez also relies on the Hall affidavit to controvert Allstate's argument on how Allstate structures its insurance premiums. Plaintiff Martinez's Response in Opposition to "Defendant Allstate Insurance Company's Motion for Summary Judgment and/or

6

Partial Summary Judgment" at 7, 8. This factual dispute as to the structure of premiums makes judicial notice of the affidavit inappropriate in this case. *See* Fed. R. Evid. 201; *York v. American Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996).

Mr. Martinez also argues, citing *Phelps v. Hamilton*, 840 F. Supp. 1442 (D. Kan. 1993), *aff'd in part, rev'd in part on other grounds*, 122 F.3d 1309 (10th Cir. 1997), that because his case and *Stone* are so closely related, the Court should take judicial notice of the Hall affidavit. In *Phelps*, the court agreed to judicial notice because the facts and issues in it and a prior case were "closely related, because the defendant had an ample opportunity to controvert the material facts in th[e prior] case, and because the parties and the court would save time and expense through this incorporation [of the entire factual and evidentiary record from the prior case]." *Id.* at 1448. The Court agrees that this case and the *Stone* case are closely related, especially for purposes of examining Allstate's premium structure. Yet, Mr. Martinez has not shown that Allstate had ample opportunity in *Stone* to controvert the Hall affidavit. Even if this Court were inclined to find *Phelps* persuasive, Mr. Martinez has not satisfied that case's requirements.

The Court will not consider the Hall affidavit in the balance of this memorandum opinion.

II.    The motions for summary judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). For the issues not before the Court on cross motions, the Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 839-40 (10th Cir. 1997), *cert.*

*denied*, 118 S.Ct. 1165 (1998), *citing Celotex v. Catrett*, 477 U.S. 317, 322-23, 325 (1986), and materiality of facts in dispute, if any, is dependent upon the substantive law. *Id.* at 839, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A federal court sitting in diversity applies the substantive law of the forum state. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In adjudicating issues of state law, the goal is to "ascertain and apply [a state's] law with the objective that the result obtained in the federal court should be the result that would be reached in [that state's] court." *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). Should a federal court not be able to ascertain the law of the forum state, it "must in essence sit as a state court and predict how the highest state court would rule." *Id.* Thus, the most recent statement from a state's highest court controls, although federal courts may view decisions from intermediate state appellate courts "as persuasive as to how the state supreme court might rule." *Sellers v. Allstate Insurance Co.*, 82 F.3d 350, 352 (10th Cir. 1996).

A. Whether Allstate's insureds may stack their UM coverage.

The parties have filed cross motions on this principal issue in the litigation. Allstate has included it in its motion for summary judgment, and Mr. Martinez has filed a motion on that single issue.

*Rodriguez v. Wilson*, the latest pronouncement from the New Mexico Supreme Court on UM stacking, explains the strong judicial policy, rooted in the uninsured motorist statute, N.M. Stat. Ann. § 66-5-301 (Michie 1998), that has evolved over the years in favor of stacking uninsured motorist benefits. *Rodriguez*, 879 P.2d at 759, *citing Lopez*, 646 P.2d at 1234-35. However the *Rodriguez* court, despite this strong public policy, nevertheless suggested in dicta that

> it may be possible to give effect to a *truly* unambiguous stacking

8

> clause, provided it plainly notifies the insured that only one premium has been charged for one insurance coverage, that the coverage provides personal accident insurance that cannot be stacked regardless of the number of vehicles covered by the policy, and that the insured should bear this feature in mind when purchasing insurance.

*Rodriguez*, 879 P.2d at 765 (emphasis in original).

Although dicta, this indication of the court's views, of recent vintage and not enfeebled by any later statement, *see Pittsburgh and Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1540 (10th Cir. 1995), provides guidance for this case. *See Florom v. Elliott Mfg.*, 867 F.2d 570, 580 (10th Cir. 1989). As in *Ashe*, slip op. at 6 n.4, the Court will "utilize the guidelines enunciated in *Rodriguez*."

The Court can not give effect to Allstate's anti-stacking clauses, for its attempt at meeting the first *Rodriguez* requirement fails because Allstate does not charge only one premium for UM coverage. In its 1990 Coverage Update, Allstate does discuss at length its new single premium charge.[3] Mr. Martinez argues that the Court should focus not on the 1990 Coverage Update, but on the 1994 amendment which attempted to circumvent *Stone* and clearly can not comply with *Rodriguez*. Regardless of which document the Court considers, however, Allstate does not charge a single premium. Allstate admits that it charges a larger amount for policies with more than one car than for policies with only one car. In fact, Allstate admits that it charges, before applying a multi-car discount, 2.47 times the single car UM premium where more than one car is on a policy.

---

[3] On the first page of the Update, Allstate states: "only one premium will be shown on your Declarations page... regardless of the number of autos insured." On the second and third pages, Allstate writes: "[n]ow, when you purchase Coverage SS [UM] for bodily injury, only one premium will be charged to cover all motor vehicles insured under your policy. Your coverage SS for Bodily Injury limits are the most that you can recover for bodily injury in any one covered accident which is caused by an uninsured motorist." *Id.* The fourth page states that "now, when you purchase Coverage SS for Bodily Injury, one premium will be charged to cover all motor vehicles insured under your policy." Weiss Affidavit, Group 1 Exhibit.

*Compare* Plaintiff's Brief in Support of his Cross-Motion for Summary Judgment on the Issue of

Stacked Uninsured/Underinsured Motorist Coverage at 7 *with* Allstate's Response to Plaintiff's

Cross-Motion for Summary Judgment on the Issue of Stacked Uninsured/Underinsured Motorist

Coverage (served June 30, 1998) at 1. Allstate maintains, however, that this increase is necessary

due to its greater loss exposure, since households with more than one car tend to have a greater claim

frequency, but steadfastly argues that the differing amounts only reflect actuarial reality and do not

represent two different premiums.

Allstate's position is in error. The supreme court in the UM stacking case of *Jimenez* has

foreclosed Allstate's precise line of argument, explaining that it was

> not swayed by any argument that the second premium, whether or not
> it is a reduced premium, is collected to indemnify the insurer against
> an increased risk of loss incurred by insuring additional vehicles. It
> is the insurer's responsibility to weigh the probability of risk and
> exposure and to set its premiums accordingly.

*Jimenez*, 757 P.2d at 796.

Thus in this case Allstate, although it may appear to charge a single premium for UM protection, in

fact charges different premiums depending on whether a policy covers a single vehicle or multiple

vehicles. *See Estate of Swartz v. Metropolitan Property & Cas. Co.*, 949 S.W.2d 72, 73 (Ky. Ct.

App. 1997); *Wilson v. Allstate Ins. Co.*, 912 P.2d 345, 346-48 (Okla. 1996). Where an insurer

charges separate premiums for its UM coverage, stacking is permissible even in the face of

exclusionary clauses. *Jimenez*, 757 P.2d at 794-95. The Court can not give effect, therefore, to

Allstate's anti-stacking policy.

As a fall-back to its single premium argument, Allstate suggests that were this Court to

construe the different amounts it charges for UM coverage to constitute two separate premiums, this

be deemed to be frivolous or unfounded. Mr. Martinez urges the Court to look not only at the denial

of stacking itself, but the manner in which Allstate continued its anti-stacking attempts following

the *Stone* decision. Because a wide variety of situations involve the concept of good faith, *Lujan v.*

*Gonzales*, 501 P.2d 673, 680 (N.M. Ct. App. 1972), the Court surveys the New Mexico law of good

faith in the insurance context.

The concept of insurance good faith, although a somewhat nebulous one, is predicated in part

on the fiduciary relationship existing between insurers and insureds. *Allsup's Convenience Stores,*

*Inc. v. North River Ins. Co.*, _ P.2d _, 1999-NMSC-006 at ¶ 37 (N.M. 1998). *State Farm Gen. Ins.*

*Co. v. Clifton*, 527 P.2d 798 (N.M. 1974), described bad faith in the refusal to pay context as "any

frivolous or unfounded refusal to pay." *Id.*, 527 P.2d at 800; *see also Gallegos v. Citizens Ins.*

*Agency*, 779 P.2d 99, 107 (N.M. 1989). The supreme court later amplified this definition, stating

that

> [u]nfounded in this context does not mean "erroneous" or "incorrect";
> it means essentially the same thing as "reckless disregard," in which
> the insurer "*utterly* fails to exercise care for the interests of the
> insured in denying or delaying payment on an insurance policy." It
> means an utter or total lack of foundation for an assertion of
> nonliability–an arbitrary or baseless refusal to pay, lacking any
> arguable support in the wording of the insurance policy or the
> circumstances surrounding the claim. It is synonymous with the
> word with which it is coupled: "frivolous."

*Jackson Nat. Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992) (emphasis in original).

More recently, the supreme court again addressed a bad faith claim, this time answering a question

which the Tenth Circuit had certified concerning a release of claims as a condition precedent for a

policy limits settlement. *Dairyland Ins. Co. v. Herman*, 1998-NMSC-005, 954 P.2d 56 (N.M. 1997).

Discussing the implied covenant of good faith and fair dealing as it applies in insurance contracts,

12

the court explained that this covenant means that "an insurer cannot be partial to its own interests, but must give the interests and the interests of the insured equal consideration." *Id.*, 1998- NMSC-005 at ¶ 12, 954 P.2d at 61, *quoting Lujan*, 501 P.2d at 680. Finally, the supreme court has held that in certain circumstances "if good faith and fair dealing require it, there can be an affirmative duty to act in order to prevent the denial of another party's right under [an] agreement." *Allsup's*, 1999-NMSC-006 at ¶ 35.

Applying New Mexico's law to the specific facts of this case the Court easily finds that Allstate, in its 1994 attempt to circumvent *Stone*, acted in reckless disregard of its policy holders' rights. Allstate does not contest, as it can not, that the effect of *Stone* was to restore stacking under its 1989 policy. Allstate's actions in 1994 and its continued denial of stacking undeniably took away something of value from the Martinez family, namely an extra $50,000 in insurance coverage.[4] *See Ashe*, slip op. at 8-9. Allstate saw fit to provide notice to its insureds in 1990 that it was taking away stacking. Allstate did not provide that same information in 1994. Instead, Allstate merely sent out an amendatory endorsement during the policy renewal process without clearly informing its insureds of the ramifications of its actions.

Although Allstate's endorsement instructs its insured to keep it with the policy, it does not explain that Allstate once again took away stacking. Taking away coverage is in the nature of forfeiture, which must be strictly construed. *See Loya v. State Farm Mut. Ins. Co.*, 888 P.2d 447, 450 (N.M. 1994). A hypothetical reasonable insured, *Rodriguez*, 879 P.2d at 762, would not

---

[4] Allstate's argument that stacking is not a policy right, since it can not be invoked until an insured suffers a loss sufficient to trigger stacking, is incorrect. An insured's policy limits are existing contractual rights, even if an injury does not fully implicate those limits.

understand the post-*Stone* effect of replacing the language of the clause "Combining Limits Of Two Or More Autos Prohibited." AU2207-1 does not explain that Allstate significantly reduced coverage. It does not advise insureds to again read the Coverage Update or the policy. Moreover AU2207-1, even if read with the 1989 policy, does not contain any statement that stacking, while allowed by *Stone* despite that policy, no longer applied. Allstate did not adequately explain the consequences of its 1994 changes. *See Ashe,* slip. op. at 8-9. Allstate's lack of explanation was particularly inappropriate for an insured not conversant with *Stone* and the esoteric legal and insurance concept of stacking. *See Rodriguez,* 879 P.2d at 762. Allstate's actions focused solely on circumventing *Stone.* In returning to its anti-stacking policy in 1994 Allstate not only did not give the interests of *its insureds equal consideration, Allstate also acted in reckless disregard of its duty to disclose coverage and provide its insureds with sufficient information to make an informed renewal decision. See Allsup's,* 1999-NMSC-006 at ¶ 35; *see also Weber v. State Farm Mut. Auto. Ins. Co.,* 873 F. Supp. 201, 206 (S.D. Iowa 1994); *Ramirez v. USAA Casualty Ins. Co.,* 285 Cal. Rptr. 757 (Cal. Ct. App. 1991).

Allstate argues that it did inform the Martinez family in its 1990 Coverage Update that stacking no longer applied. However, even if the language in that update had effect under the *Rodriguez* dicta requiring that an insurer must clearly inform an insured regarding stacking, it no longer had any independent meaning after *Stone.* Thus, Allstate should have informed its insureds of the reason it sent out AU2207-1, or at least have explained, once again, that it would no longer allow stacking.

The Court is aware that, where a claim arises surrounding the renewal of an insurance contract that does not contain a renewal clause, some courts have declined to find that the tort of

14

insurance bad faith applies.[5] *See Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1372 (Co. 1993) (en banc) (Erickson, J. specially concurring). In this instance, however, the dispute centers not around Allstate's right to offer renewal of a policy at a premium of its own choosing, but in part around its actions in not adequately informing its insureds of the extent of coverage it was offering at renewal time. Where a policy contains a renewal clause, as in this case, the contractual relationship between the parties is of a continuing nature. *Simper v. Farm Bureau Mut. Ins. Co. of Idaho*, 974 P.2d. 1100, 1103 (Idaho 1999). Consequently, Allstate's duty of good faith continued during the renewal of the Martinez policy in 1994, and any breach thereof is actionable. *See, e.g., id.* at 1104 (Silak, J. concurring in part and dissenting in part). In short, it is clear that the tort of insurance bad faith can exist outside the claims settling context, *see Ballow*, 875 P.2d at 1363, and that New Mexico's principles of bad faith in the refusal-to-pay context are equally applicable here. "It is the nature of the relationship created by the insurance contract, rather than the activity involved, which determines if the duty of good faith and fair dealing exists." *Id.*

      C.     Whether Allstate's insureds may stack their medical payments coverage.

*Sanchez* and *Vigil* together provide the framework controlling stacking of medical payments coverage in New Mexico. *Sanchez* considered for the first time whether medical payments coverage should be stacked, *Sanchez*, 783 P.2d at 468, and examined an exclusionary clause for ambiguity. *Id.*, 783 P.2d at 469. *Vigil* held that policy language not involving a medical payments exclusionary

---

[5] The Court assumes that, if squarely presented with the question, the New Mexico Supreme Court would rule that an insurance bad faith claim sounds at least in tort, if not also in contract. In *Charter Services, Inc. v. Principal Mut. Life Ins. Co.*, 868 P.2d 1307, 1313 (N.M. Ct. App. 1994), the appellate panel characterized a bad faith action as a hybrid, not exclusively grounded in either contract or tort. In *Bourgeous v. Horizon Healthcare, Inc.*, 872 P.2d 852, 857 (N.M. 1994) the supreme court strongly implied that it would permit tort recovery in an insurance bad faith action.

clause, together with the expectations of insureds based in part on the payment of separate premiums, favored stacking. *Vigil*, 811 P.2d at 71.

Like UM coverage, medical payments coverage follows the person, and is akin to a limited personal accident insurance. *Vigil*, 811 P.2d at 568; *see also Sanchez*, 783 P.2d at 470. However, there is a salient difference between UM and medical payments coverage: New Mexico has no statutory policy regarding medical payments coverage. *Vigil*, 811 P.2d at 566. Generally, then, traditional principles of contract interpretation apply to resolve whether a policy unambiguously precludes stacking of medical payments coverage. *Sanchez*, 783 P.2d at 468. More specifically, principles of construction in the insurance industry setting color the analysis. *Vigil*, 811 P.2d at 566.

In the absence of a statutory policy, New Mexico follows two principles for deciding stacking questions. First, "an insurance company may have a duty to specifically exclude stacking if the policy as a whole encourages the insured to expect coverage." *Sanchez*, 783 P.2d at 468, *citing Lopez*, 646 P.2d at 1232. Second, "exclusionary provisions will be enforced only if they are unambiguous." *Sanchez*, 783 P.2d at 468. When examining the words of an insurance contract for ambiguity, a court must examine the entire contract and may not find ambiguity unless the contract is reasonably and fairly susceptible of different constructions. *Id.*, 783 P.2d at 469. However, courts must be mindful that '[n]ot only does the insurance company draft documents, but it does so with far more knowledge that the typical insured of the consequences of particular words." *Id.*

Allstate argues that its policy language and the language of endorsement AU2207-1 clearly and unambiguously preclude stacking of medical payment coverage, despite its charging three separate premiums for such coverage. Mr. Martinez disagrees, stating that the policy's exclusionary language is ambiguous and should be strictly construed against Allstate. Mr. Martinez also states

16

that it would be inequitable, and contrary to statutory public policy,[6] to allow Allstate to charge three

separate premiums for insurance that, like UM coverage, follows the person.

In Mr. Martinez's case, his parent's declaration page in force on July 20, 1995 showed three

separate premiums for medical payments coverage, each assigned to one of the insured cars.

Payment of separate premiums gives rise to an expectation of stacking. *Lopez*, 646 P.2d at 1234;

*Jimenez*, 757 P.2d at 792, 794-95; *Sanchez*, 783 P.2d at 159; *Vigil*, 811 P.2d at 569.[7] As Mr.

Martinez correctly notes, the issue here, then, is whether Allstate's policy and endorsement language

contains an unambiguous exclusionary clause that defeats those expectations.

Allstate attempts to exclude stacking in two locations in its policy, once in a limit of liability

clause, and once in the 1994 amendatory endorsement. The limit of liability clause states:

> ### Limits of Liability
>
> The limit shown on the declarations page is the maximum **we** will
> pay for expenses incurred by or for each insured person as the result
> of any one **auto** accident.
>
> The medical payments limit applies to each insured **auto** as shown on
> the declarations page. The insuring of more than one person or **auto**
> under this policy won't increase **our** limit beyond the amount shown
> for any one **auto**, even though a separate premium is charged for each
> **auto**. The limit also won't be increased if **you** have other **auto**
> insurance policies that apply.

---

[6]  New Mexico law provides that "[n]o person shall willfully collect any sum as premium or charge for
insurance or other coverage, which insurance or coverage is not then provided or in due course to be provided
(subject to acceptance of the risk by the insurer) by a policy issued by an insurer." N.M. Stat. Ann. § 59A-16-24
(Michie 1995).

[7]  *Vigil*, as the latest pronouncement from the supreme court, is controlling, and in *Vigil* the court does seem
to distance itself from the position that separate payments lead to stacking expectations. *See Vigil*, 811 P.2d at 569.
While *Vigil* equivocates, however, the court there also expressly states that it "do[es] not retreat from anything [it
has] said in the uninsured motorist field, or, in *Sanchez*, in the medical payments field." *Id.* Absent a clearer
change in the law of reasonable expectations this Court reads *Vigil* in the light of other precedents.

Weiss Affidavit, Group 1 Exhibit (emphasis in original).

AU2207-1, the 1994 amendatory endorsement, states:

> **Combining Limits Of Two Or More Autos Prohibited**
> If **you** have two or more **autos** insured in **your** name and one of these
> **autos** is involved in an accident, only the coverage limits shown on
> the declaration page for that **auto** will apply. When **you** have two or
> more **autos** insured in **your** name and none of them is involved in the
> accident, **you** may choose any single **auto** shown on the declarations
> page and the coverage limits applicable to that **auto** will apply.
>
> The limits available for any other **auto** covered by this policy will not
> be added to the coverage for the involved or chosen **auto**.
>
> This provision does not apply to Coverages CM and CW. This
> provision does apply to all other coverages in this policy, including
> Coverage SS.

Weiss Affidavit, Group 2 Exhibit (emphasis in original).

The limits of liability clause has no effect in this instance, since it does not address the facts of this

case, an accident occurring in a non-owned vehicle, and focuses on the vehicles owned by the

insured. The amendatory endorsement, however, contemplates Mr. Martinez's precise situation.

Although the first paragraph of the endorsement if read by itself may be sufficient to preclude

stacking, the endorsement taken as a whole is sufficiently ambiguous to allow the insureds'

reasonable expectations to control in this case. The first paragraph of the endorsement invites an

insured to apply the highest limits available, per vehicle, under the policy. In so doing, AU2207-1

specifically addresses a failing identified in *Vigil* that in part led to stacking in that case. *See Vigil*,

811 P.2d at 567. *Vigil* found ambiguity where an insurers' policy language did not address a non-

owned vehicle accident, and stated that in those circumstances the premium amounts per vehicle

listed in a declaration page would be irrelevant. *Id.* Here Allstate has specifically included language

providing relevance, and therefore in the first paragraph of AU2207-1 addressed an ambiguity *Vigil* identified. Had Allstate stopped there *Sanchez* and *Vigil*, read together, may not have allowed the stacking of medical payments in this case.

Allstate went on to state in the endorsement, however, that "[t]he limits available for any other auto covered by this policy will not be added to the coverage for the involved or chosen auto." Mr. Martinez argues that this language is ambiguous, and the Court agrees. Allstate's language here could reasonably imply both that other limits are available, and that they would not be given effect. In that one sentence, Allstate has introduced tension and ambivalence with respect to what limits are available and what limits are not. The Court construes ambiguities in favor of an insured. *Sanchez*, 783 P.2d at 469. Recognizing that Allstate, as the drafter of this document, has done so "with far more knowledge than the typical insured of the consequences of particular words," *id.*, the Court concludes that Mr. Martinez must benefit from that ambiguity.

Having found in favor of the stacking of medical payments coverage, the Court need not go on to decide Mr. Martinez's § 59A-16-24 argument.

D.     Whether the Court should grant Allstate summary judgment on Mr. Martinez's negligence claim.

In its motion for summary judgment, Allstate also seeks summary judgment on Mr. Martinez's negligence claim. Mr. Martinez has asserted in his amended complaint that Allstate had a duty, under New Mexico's uninsured motorist statute, to offer and obtain the rejection from its insureds of the highest possible UM limits. The statute provides that no insurance policy may be issued

19

> unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 [, setting mandatory minimums of coverage,] and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy... The named insured shall have the right to reject uninsured motorist coverage... provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

N.M. Stat. Ann. § 66-5-301 (Michie 1998).

It is undisputed that in its 1990 Coverage Update and policy, Allstate offered UM coverage limits at the maximum rates mandated by the act. It is also undisputed that the Martinez family selected lower limits both for bodily injury and property damage than they could have under the act.

Allstate argues that New Mexico law only requires a signed rejection when an insurer rejects all UM coverage, but does not require a signed rejection when insureds selects lower UM limits than they choose for bodily injury limits. Allstate then states that even if the Court construed New Mexico statutes to require insurers to formally offer UM coverage at the same limits as bodily injury coverage, it has done so in this case. According to Allstate, it informed the Martinez family in 1990 of the differences between the two coverages and suggested that they increase their UM limits by paying an additional premium. Mr. and Mrs. Martinez, however, did not increase their coverage and had the lower limits in force at the time of their son's accident.

The case law surrounding the offer and rejection of UM coverage pursuant to § 66-5-301 is abundantly clear: in order to implement its remedial purpose, the supreme court liberally interprets the statute and strictly construes any limitations on UM coverage to protect an insured. *Romero v.*

*Dairyland*, 803 P.2d 243, 245 (N.M. 1990). Thus in *Romero* the court found valid administrative regulations that required a rejection of UM coverage to be attached to, or otherwise made part of the policy. The court also ruled that even express, written rejection of UM coverage was invalid when not conforming to those requirements. *Id.*, 803 P.2d at 245-46. More recently in *Kaiser v. DeCarrera*, 923 P.2d 588 (N.M. 1996), the court held an insurer to a strict standard of compliance in confirming with an insured that he had rejected UM coverage.

Although it appears to be an issue of first impression, under this standard the Court has no difficulty in finding, from the plain language of the statute, that an insurer in New Mexico has the affirmative duty to offer coverage at the highest possible limits, mirroring the liability limits an insured has otherwise chosen. Section 66-5-301 speaks in the conjunctive of including in a policy, unless rejected, not only minimum statutory limits but "such higher limits as may be desired by the insured." On its face, then, the statute requires an insurer both to include minimum limits in its offer of coverage and to inform a prospective insured that higher coverage, up to the limits of other liability coverage, is available. Under § 66-5-301, *Romero*, and *Kaiser* insurers must obtain a rejection of the higher coverage.

The Court also finds that Allstate has complied with its § 66-5-301 duty. Mr. Martinez does not dispute that Allstate made a sufficient offer of higher coverage in 1990. Neither does Mr. Martinez dispute that the Martinez's selection of lower UM limits constituted rejection of the higher limits offer, and *Romero* only requires that an insured "has affirmative evidence of the extent of coverage," *Romero*, 803 P.2d at 245, which the Martinez family had. Mr. Martinez alleges, however, that Allstate made no such sufficient offer in 1994, when it once again attempted to take away stacking in its renewal of the Martinez policy. New Mexico law does not require a § 66-5-301

21

offer upon renewal of a policy. The court of appeals has held, relying on *Romero*, that "the crucial requirement concerning UM rejections is that the insured be made well aware of the insured's *initial* decision to reject UM coverage." *Vigil v. Rio Grande Ins.*, 1997-NMCA-124 at ¶ 17, 950 P.2d 297, 303 (N.M. Ct. App. 1997) (emphasis added). Moreover, an insurer has no duty to explain to prospective insureds the ramifications of their decision to reject coverage. *Id.*, 1997-NMCA-124 at ¶ 10, 950 P.2d at 301. Thus, that Mr. Victoriano Martinez did not understand the full implications of his coverage choice, as his son alleges, does not "raise a fact question as to whether the rejection was knowing and intelligent." *Id.*

      E.      Whether the Court should grant Allstate summary judgment on Mr. Martinez's intentional infliction of emotional distress claim.

Citing a string of cases from other jurisdictions, Allstate argues here that its actions could not constitute conduct sufficiently extreme and outrageous to be actionable under New Mexico law. Allstate also argues that Mr. Martinez's deposition testimony, even when supported by the testimony of his father, shows that Mr. Martinez can not meet, as a matter of law, the requirement of severity of distress that New Mexico imposes. Mr. Martinez responds, without addressing Allstate's cited authority, that he has alleged sufficient emotional distress to meet New Mexico's standard of severity.

The tort of intentional infliction of emotional distress, given effect in New Mexico by *Dominguez v. Stone*, 638 P.2d 423 (N.M. Ct. App. 1981), requires both outrageous conduct and severe consequences. Quoting with approval from the Restatement (Second) of Torts, the *Dominguez* court stated that to be actionable, conduct must go beyond acting with an intent which may be tortious or even criminal, and must be "so outrageous in character, and so extreme in degree,

22

to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*, 638 P.2d at 426. In addition,

> it is only where [distress] is extreme that liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.

*Id.*, 638 P.2d at 427; *see also Jaynes v. Strong-Thorne Mortuary, Inc.*, 1998-NMSC-004 at ¶¶ 12-14, 954 P.2d 45, 50 (N.M. 1997); Rule 13-1628 NMRA 1997. Courts must initially determine "whether the defendant's conduct may be regarded as so extreme and outrageous as to permit recovery." *Salazar v. Furr's, Inc.*, 629 F. Supp. 1403, 1410 (D. N.M. 1986). Where reasonable minds may differ a jury should decide whether the conduct at issue meets the requirements of the tort. *Id.*

Applying this standard, the Court agrees with Allstate that its conduct has not been, in this case, sufficiently extreme and outrageous as to give rise to the tort of intentional infliction of emotional distress. "To be sustainable, a claim for outrageous conduct must be based upon action that is more egregious than either the conduct underlying a bad faith breach of contract claim or a willful and wanton breach of contract claim." *Muñoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 129 (Colo. Ct. App. 1998). Even where an insurer has acted in bad faith, courts have declined to find outrageous conduct. *Wilson v. State Farm Mut. Auto Ins. Co.*, 934 F.2d 261, 265-66 (10th Cir. 1991); *see also Beckham v. Safeco Ins. Co. of America*, 691 F.2d 898, 904 (9th Cir. 1982).

Nevertheless, in certain circumstances an insurer's conduct can be actionable as outrageous. *See Fletcher v. Western National Life Ins. Co.*, 89 Cal. Rptr. 78 (Cal. Ct. App. 1970). In *Fletcher*, in an effort to avoid a financial burden the insurer deliberately attempted to force an insured to

23

compromise a claim, contrary to all available factual evidence clearly indicating the error of its position. *Id.* The insurer in *Walston v. Monumental Life Ins. Co.*, 923 P.2d 456 (Idaho 1996), marketed a policy utilizing misrepresentations about its scope of coverage, denied coverage on a specious theory, impugned the beneficiary's character, and engaged in a prolonged dispute with him following the death of his wife. *Id.* at 465. Both these cases show, then, that the tort of intentional infliction of emotional distress is available in disputes involving the scope of insurance coverage.

Despite the availability of this tort in the insurance context, Mr. Martinez can not prevail on his claim. Here, Allstate has acted in bad faith in its attempt to restore its anti-stacking provision in response to *Stone*. Mr. Martinez, however, has not alleged conduct that approaches the facts of *Fletcher* or *Walston*. Nor has Mr. Martinez cited a single case to illustrate that Allstate's conduct in this instance has been extreme and outrageous. Under those circumstances, the Court is compelled to grant summary judgment on that issue.

III.     Plaintiffs' objections to the magistrate's orders [Doc. No. 130 and 131].

Mr. Martinez has appealed two of the magistrate's discovery rulings, one involving a motion to compel answers to interrogatories and one addressing a motion to compel production of documents. In his interrogatories 5, 6, 11, 12, 15-18, and 21, Mr. Martinez sought information which he alleges Allstate has not provided or only partially provided. Interrogatories 5 and 6 requested information on Allstate's 1989 policy, and the magistrate ruled that this policy was irrelevant. In interrogatories 11 and 12 Mr. Martinez asked for a list of claim numbers where Allstate denied any stacked UM coverage and where it denied coverage on 3 and 4 cars. Although the magistrate found that Allstate had already disclosed this information, Mr. Martinez claims that he can not compile the answers he seeks from the voluminous documents already disclosed. Mr.

24

Martinez argues that Allstate is in a better position to compile, from its computer records, the necessary lists. Interrogatories 15 and 16 request the number of claims where Allstate refused to stack UM coverage for 3 and 4 cars. There Mr. Martinez argues that the magistrate erred when he ruled that this information was provided in other interrogatories addressing the stacking of 2, 3, or 4 cars. Interrogatories 17 and 18 request the disclosure of names and addresses of insureds to whom Allstate has denied stacking. Prior to the Court's certifying a class in this case, the magistrate ruled this information not discoverable. Finally, in interrogatory 21, which the magistrate seemed not to have addressed in his order, Mr. Martinez asks Allstate to identify and describe all communications it sent its insureds in September, 1994 in addition to the AU2207-1 amendatory endorsement.

Mr. Martinez also objects to the magistrate's order ruling on his motion to compel the production of documents for requests 8, 9, 26, and 27. There requests 8 and 9 sought information from 1987 to the present relating to stacking of UM coverage. The magistrate, again before the Court certified a class of plaintiffs, declined to order production. For requests 26 and 27 Mr. Martinez asked for copies of all legal opinions on which Allstate relied in handling his claim and formulating its stacking policies. The magistrate judge, upon Allstate's assertion of the attorney-client privilege, also denied to compel production.

Where not dispositive, a court will "defer to the magistrate's rulings unless [they were] clearly erroneous or contrary to law." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 298 (1997), *citing Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). Under this standard, a court must affirm the ruling unless that court is left "with the definite and firm conviction that a mistake has been committed." *Ocelot*, 847 F.2d at 1462, *citing United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

The expansive discovery allowed under the rules of civil procedure is not without limits. *Hickman v. Taylor*, 329 U.S. 495 (1947); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978). The law strives to balance broad and liberal treatment of discovery and its ultimate and necessary boundaries. *Hickman*, 329 U.S. at 507. *Hickman* held in part that "limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id.* at 508. The discovery rules themselves set forth additional guidance. The rules provide that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action... if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Courts may also limit discovery where the burdens on the party against whom discovery is sought outweigh the discovery's likely benefit. *Id.* With these principles in mind, the Court turns to each request in its inquiry on whether the magistrate's rulings were clearly erroneous.

A.   The appeal of the magistrate's order denying the motion to compel answers to interrogatories.

Allstate must answer interrogatories 5 and 6. The magistrate ruled that Allstate's 1989 policy was irrelevant, and Allstate also argues irrelevance to the Court. Yet Allstate has numerous times in its briefing referred to the 1989-90 policy as the centerpiece of its anti-stacking efforts, and has claimed that its 1994 documentation was but an amendment of that policy. While the focus of the present action is Allstate's reaction to *Stone*, the 1989 policy, as a foundation for all subsequent events, is not irrelevant. Thus Allstate must, under the liberal standards of Rule 26 that focus on disclosure of information reasonably calculated to lead to the discovery of admissible evidence, provide discovery on its 1989 policy.

26

Allstate also must answer interrogatories 11 and 12. The magistrate essentially ruled that Allstate already had provided that information through the production of files the Court previously ordered. Mr. Martinez does not dispute that Allstate has disclosed the required information. Rather, Mr. Martinez argues that the form of the disclosure places a much greater burden on him than on Allstate. He asserts that while Allstate has already disclosed 20,000 pages of documents, locating the information those interrogatories seek in those documents is burdensome, while Allstate may easily access that information through its computer databases.

Rule 33(d) allows a party to meets its discovery obligations by specifying from which records an answer may be derived, but only if "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." Fed. R. Civ. P. 33(d). Moreover, the specification "shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." *Id.* Here, Allstate does not dispute that it has access to computer records from which it can compile the lists Mr. Martinez has sought, while Mr. Martinez alleges having to pore over the vast number of documents the compilation requested. A computer query or series of queries imposes a significantly lesser burden than a paper search. "Under the guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories specifically which documents contain the answer." *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 305 (D. Kan. 1996). In order to meet the clear requirements of the rule Allstate must answer interrogatories 11 and 12.

There was no error in the magistrate's rulings on the motion to compel for interrogatories 15 and 16. The interrogatories ask for the number of New Mexico claims where Allstate refused to

27

stack 3 or 4 UM coverages as a result of it 1994 policy change. The magistrate ruled that this information could be gleaned from the answers to interrogatories 13 and 14. The Court sees no error in this ruling. Mr. Martinez now states, however, that Allstate had not, as of November 6, 1998, complied with the magistrate's order to answer interrogatories 13 and 14. To the extent that Allstate still has not complied with this discovery request, Allstate must answer those interrogatories.

Although the magistrate did not err with respect to interrogatories 17 and 18, Allstate now must answer those requests. There the magistrate, under the procedural posture that the Court was to initially rule on the class certification motion, refused to compel the disclosure of names and addresses of persons to whom Allstate had denied stacking and whose cases are in any way dependent on the outcome of this case. Mr. Martinez argues that any limitation on discovery to class certification issues is no longer applicable. Mr. Martinez also asserts that he needs to know the names of those denied stacking in order to call them as witnesses. Allstate in response argues that Mr. Martinez does not have any legitimate use for the information sought. The Court disagrees. Mr. Martinez is entitled to try to prove his case through the calling of witnesses, and those insureds with whom Allstate has had dealings, and who because of class certification may now well be class plaintiffs, may have relevant information to contribute. This case has moved on past the class certification issue. Therefore, the names Mr. Martinez has sought, while not relevant before, are relevant now. Allstate must answer interrogatories 17 and 18.

Finally, the magistrate did not address interrogatory 21. In that interrogatory, Mr. Martinez seeks to discover all communications between Allstate and its insureds in September, 1994 concerning stacking. Allstate responds that it has produced those documents, while Mr. Martinez counters that Allstate has not specifically identified those documents. Pursuant to Rule 33(d),

28

Allstate must do so now and fully answer interrogatory 21.

B.    The appeal of the magistrate's order denying the motion to compel the production of documents.

Like the ruling on interrogatories 17 and 18, the magistrate's ruling on the motion to compel production was correct for requests 8 and 9 since the Court had not yet ruled on class certification. However, since this case has cleared this juncture, it is now appropriate for Mr. Martinez to obtain discovery with respect to Allstate's stacking decisions. Allstate claims that it has already produced the documents Mr. Martinez seeks. To the extent it has done so, Allstate may provide a listing of documents already produced. Absent that disclosure, now that this case has moved past the class certification stage Allstate must produce all non-privileged documents sought in requests 8 and 9.

Mr. Martinez's requests 26 and 27 on their face appear to seek privileged material, since Mr. Martinez wishes to obtain copies of Allstate's internal legal opinions relevant to this case. The magistrate, citing attorney-client privilege, declined to compel production. This is not the first time this case has seen this issue arise. In addressing previous objections to discovery orders, the Court found, without deciding the privilege issue, that disclosure of the documents was not relevant to class certification. *See Martinez v. Allstate Ins. Co.*, No. CIV 96-1031, slip. op. at 8 (D. N.M. June 22, 1998). Mr. Martinez now renews his attempts at discovering the legal memoranda which may have guided Allstate in its stacking decisions.

The issue before the Court is not whether the privilege applies, but whether Allstate has implicitly waived the right to shelter certain documents from discovery. In prior briefing on this issue [Doc. No. 72], Mr. Martinez argued that Allstate had waived its attorney-client privilege by asserting that it relied on the advice of its counsel in implementing its anti-stacking policies. Allstate

denied that it had raised an advice of counsel defense in this case, arguing that it merely had sought the advice of its attorneys as would any prudent corporation. Allstate also argued that it did not implicitly waive the privilege by stating, in defending a bad faith claim, that it acted within its understanding of the law.

In this diversity case, the state law of privilege controls. *Frontier Refining, Inc. v. Gorman-Rupp Co. Inc.*, 136 F.3d 695, 699 (10th Cir. 1998). Because research has not uncovered a New Mexico case that addresses the present issue, however, this Court looks to "other state-court decisions, well-reasoned decisions from other jurisdictions and any other available authority to determine the applicable state law."[8] *Id.* at 700, *quoting Burns v. International Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991). Coloring the Court's analysis is the principle that the attorney-client privilege is to be strictly construed. *In Re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998), *cert. denied sub nom. Anderson v. United States*, 119 S.Ct. 412 (1998); *Hartman v. El Paso Natural Gas Co.*, 763 P.2d 1144, 1152 (N.M. 1988).

A party may waive the attorney-client privilege where it "defends the conduct which is the subject of the suit by relying on the advice of counsel." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995); *see also United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998); *Ideal Electronic Sec. Co. v. Intern. Fidelity Ins.* 129 F.3d 143, 151-52 (D.C. Cir. 1997); *Fidelity and Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 520 (E.D. Penn. 1996). For example, in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3rd Cir. 1995), a defendant in response to fraud and

---

[8] *Skaggs v. Conoco, Inc.*, 1998-NMCA-061, 957 P.2d 526 (N.M. Ct. App. 1998), *cert. denied* 958 P.2d 103 (1998), holds that there must be some offensive use of privileged information for waiver to occur, where the defendants asserted laches as a defense in a quiet title action.

breach of fiduciary duty charges raised the affirmative defense that it had acted on the advice of counsel in a stock buy-back transaction. *Id.* at 480, 486. Recognizing that a party could not both raise its relationship with an attorney as a sword and then shield itself through selective disclosure, the court reasoned that "[t]here is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice." *Id.* at 486. The *Glenmede* court went on to hold that because the defendant had raised an affirmative defense of advice of counsel, it had waived its privilege as to all communications with counsel surrounding the transaction. *Id.* at 487.

In this case Allstate has raised an affirmative defense which, while not expressly mentioning advice of counsel or being as clear as in *Glenmede*, creates an issue as to whether it reasonably relied on its understanding of the law in its decision to preclude stacking of UM and medical payments coverage. Allstate has alleged as an affirmative defense "at the very least, [having] a legitimate and fairly debatable basis for both its uninsured/underinsured motorist coverage and medical payments coverage anti-stacking positions." Answer to Amended Complaint at 12. Allstate has also argued that it has acted within its understanding of the law, and therefore has not acted in bad faith. In order to counter this affirmative defense, Mr. Martinez is entitled to test whether Allstate's counsel "was provided with all material facts in rendering their advice, whether counsel gave well-informed opinion and whether that advice was heeded by [Allstate]." *Glenmede*, 56 F.3d at 486.

*United States v. Bilzerian*, 926 F.2d 1285 (2nd Cir. 1991), provides further persuasive guidance. In *Bilzerian* a defendant on trial for charges of securities fraud sought in a motion in limine to be able to testify regarding his belief in the lawfulness of his actions while not exposing himself to cross-examination on discussions that he may have had with his attorney concerning the

31

matter. *Id.* at 1291. The trial court ruled that "if [the] defendant testified regarding his good faith regarding [sic] the legality of disclosure, it would open the door to cross-examination with respect to the basis for his belief, and that such cross-examination would allow inquiry into communications with his attorney." *Id.* The appellate panel affirmed. Reasoning that the attorney-client privilege "may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications," *id.* at 1292, the *Bilzerian* court held that Bilzerian's testimony touching on his belief in the legality of his actions would have put his knowledge of the law and the basis for his understanding of what the law required in issue. *Id.* As in *Bilzerian,* Allstate's alleging that it has a legitimate basis for its actions, therefore, has placed its knowledge and understanding of the law at issue in this case. Allstate must produce the documents sought in requests 26 and 27.

**THEREFORE,**

**IT IS HEREBY ORDERED** that Defendant Allstate Insurance Company's Motion to Strike Affidavit of James A. Hall, III, filed July 21, 1998 **[Doc. No. 98]**, Plaintiff's Cross-Motion for Summary Judgment on the Issue of Stacked Medical Payments Coverage, filed July 30, 1998 **[Doc. No. 103]**, Plaintiff's Cross-Motion for Summary Judgment on the Issue of Stacked Uninsured Motorist Coverage, filed July 30, 1998 **[Doc. No. 111]**, and Plaintiff's Cross-Motion for Summary Judgment on the Issue of Defendant Allstate's Bad Faith, filed July 30, 1998 **[Doc. No. 107]** be, and hereby are, **granted**.

**IT IS FURTHER ORDERED** that Defendant Allstate Insurance Company's Motion for Summary Judgment and/or Partial Summary Judgment, filed June 22, 1998 [Doc. No. 85], Plaintiff's Objections to Magistrate Order on the Motion to Compel Defendant Allstate to Answer Interrogatories (Magistrate's Order Was Filed 09/18/98), filed October 5, 1998 **[Doc. No. 130]** , and

Plaintiff's Objections to the Magistrate's Order on the Motion to Compel Defendant Allstate to Produce Documents (Magistrate's Order Was Filed 09/18/98), filed October 5, 1998 **[Doc. No. 131]** be, and hereby are, **granted in part**.

    *IT IS FURTHER ORDERED* that Plaintiff's Motion in Limine to Exclude the Testimony of Stanley Frost and Brief in Support of the Motion (Served July 30, 1998), filed September 8, 1998 **[Doc. No. 118]** be, and hereby is, **dismissed as moot**.

    **IT IS FURTHER ORDERED** Defendant Allstate Insurance Company shall answer Plaintiffs' Interrogatories Number 13 and 14, if it has not already done so, and produce the documents sought in requests for production 26 and 27 within five (5) days of the filing of this order.

    **IT IS FURTHER ORDERED** that Counts V and VI of Plaintiff's Amended Complaint be, and hereby are, **dismissed from this action**.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff and for the Class

Janet Santillanes
James T. Roach
David Archuleta

Counsel for Defendant

Lisa Mann
Jennifer A. Noya

33

PLEASE READ THE INSURANCE DECLARATIONS TO THE POLICY

ALLSTATE INSURANCE COMPANY

ISSUED MAR 9, 1995

EFFECTIVE ON MAR 08, 1995, YOUR POLICY HAS CHANGED FOR A CHANGE IN DRIVER OR USE CLASS OF VEHICLE NO. 3

YOUR NEW ACCOUNT PREMIUM, ITEMIZED BELOW, IS    $ 1333.00

0 36 467237 02/01
760 066744

VICTORIANO R & CECILA   ?
MARTINEZ
826 ARTIE RD NW
ALBUQUERQUE NM 87114-1003

FROM      FEB 1, 1995
TO        AUG 1, 1995
AMENDED   MAR 8, 1995

| COVERAGE DESCRIPTION | 94-CHERO | 83-TURIS | 79-CHEVT |
|---|---|---|---|
| AA & BB BODILY INJURY & PROPERTY DAMAGE LIAB. | $135.00 | $100.00 | $62.00 |
| CC AUTO MEDICAL PAYMENTS | $17.00 | | $17.00 |
| DD AUTO COLLISION | $126.00 | | $37.00 |
| HH AUTO COMPREHENSIVE | $6.00 | | |
| SS UNINS,MOTR--PROP. DAMAG | $4.20 | $4.20 | $4.20 |
| TOTALS FOR EACH VEHICLE ACCOUNT | $144.20 | $171.20 | $725.20 |

| 03/08/95 TO 08/01/95 | $290.20 | $136.40 | $676.30 |

| GOOD DRIVER RATE APPLIED | YES | YES | YES |
| ADVANTAGE DISCOUNT | YES | YES | YES |
| MULTIPLE POLICY DISCOUNT | YES | YES | YES |
| ANTI-LOCK BRAKE DISCOUNT | | | |
| PASSIVE BRAKE DISC. | YES | | YES |
| MULTIPLE CAR DISCOUNT | YES | YES | YES |
| UTILITY CAR DISCOUNT | YES | YES | YES |

| 1 | 94 | CHERO 1J4FJ69S6RL131355 FIRST FIN OF NM FCU |
| 2 | 83 | TURIS 2P3BW46X9DH221844 |
| 3 | 79 | CHEVT CCL49J750P45 |

1 2 3   AA BODILY INJURY LIABILITY
        $50,000 EACH PERSON - $100,000 EACH OCCURRENCE
1 2 3   BB PROPERTY DAMAGE LIABILITY
        $25,000 EACH OCCURRENCE
1   3   CC AUTOMOBILE MEDICAL PAYMENTS
        $5,000 EACH PERSON
1   3   DD AUTOMOBILE COLLISION
        LESS DEDUCTIBLE OF     $250.00    --ACTUAL CASH VALUE
                               EACH OCCURRENCE
1       HH AUTOMOBILE COMPREHENSIVE
        LESS DEDUCTIBLE OF     $50.00     --ACTUAL CASH VALUE-
1 2 3   SS UNINSURED MOTORISTS
        PROPERTY DAMAGE        EACH OCCURRENCE
        $10,000 EACH ACCIDENT
1 2 3   LESS DEDUCTIBLE OF     $250 EACH ACCIDENT

OTHER COVERAGES
SS UNINSURED MOTORISTS

YOUR PREMIUM INCLUDES ALL DISCOUNTS REQUIRED BY NEW MEXICO LAW

ADVANTAGE CUSTOMER - THANKS FOR BEING A SAFE
DRIVER AND INSURING YOUR HOME WITH US.

OTHER COVERAGES
SS UNINSURED MOTORISTS               OTHER
                                     $74.40

OTHER COVERAGES
SS UNINSURED MOTORISTS
BODILY INJURY
$50,000 EACH PERSON - $60,000 EACH ACCIDENT

THERE IS NO CHANGE IN PREMIUM FOR THE CURRENT PREMIUM PERIOD.

EB-5    30 160827 1-3 264131X4000 Y 2 A01 10 000000
00 7000 2-01-95 2-3 264131X4000 3 3 K7X 10 000000
42 41 19          3-3 E411116050 S 3 DC6 36 000000
036 467237

APPENDIX A