IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MANUEL MARTINEZ, on behalf of
himself and others similarly situated,

    Plaintiff,

vs.                                                                                                   No. CIV 96-1031 MV/JHG

ALLSTATE INSURANCE COMPANY,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant Allstate Insurance Company's Motion to Reconsider, Alter or Amend Judgment and/or for Relief From Judgment, filed July 20, 1999 **[Doc. No. 150]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **denied**.

### Background

In a June 10, 1999 Memorandum Opinion and Order, this Court addressed cross motions for summary judgment and ruled that Allstate, in attempting to restore its anti-stacking policy in the wake of *Allstate Ins. Co. v. Stone*, 863 P.2d 1085 (N.M. 1993), had acted in bad faith. More precisely, the Court held that in 1994 Allstate acted in reckless disregard of its policy holder's rights by not clearly informing its insureds that it was, as in 1990, taking away stacking under their policies. The Court found that Allstate failed to provide its insureds with sufficient

information regarding stacking that would have allowed them to make an informed renewal decision. *See Martinez v. Allstate Ins. Co.*, No. CIV 96-1031 MV/JHG, slip op. at 11-15 (D. N.M. June 10, 1999). The ruling rested on Allstate's sending to its insureds an amendatory endorsement, AU2207-1, which the Court found inadequate in explaining to Allstate's policy holders that the insurance company would no longer stack uninsured motorist coverage. *Id.*

Allstate has come forward in a motion for reconsideration with the startling information that AU2207-1 was not the sole information it sent out to its insureds in 1994. Allstate now alleges, and supports through affidavits, that it sent along another insert, X-5045, which states in pertinent part:

> ***Important Notice***
>
> **Important Information About Your Uninsured Motorists Insurance**
>
> Under the Uninsured/Underinsured Motorist section of your policy, you are no longer allowed to combine (or "stack") your limits under Section I of Coverage SS.
>
> Under the General provisions section entitled, "Combining Limits of Two or More Autos Prohibited," it was previously stated in the last paragraph that "This provision does not apply to Coverages CM, CW, and *Section I of Coverage SS*."
>
> Now, the revised paragraph of the enclosed endorsement (AU2207-1) reads, "This provision does not apply to Coverages CM and CW. This provision does apply to all other coverages in this policy, including Coverage SS."
>
> If you have any questions regarding this revision or your policy in general, please contact your Allstate agent.

Exhibit A-1 to Memorandum in Support of Allstate's Motion to Reconsider, Alter or Amend Judgment and/or for Relief From Judgment (emphasis in original).

Allstate explains its failure to bring this document to the Court's attention as counsel error.

2

Allstate asks the Court, in light of the evidence it now presents, to reverse its grant of summary judgment in Mr. Martinez's favor and grant summary judgment against Mr. Martinez on the issue of bad faith. In the alternative, Allstate seeks a determination that there now exists, because of this evidence, genuine issues of fact that require a trial on the bad faith issue. Allstate implicitly argues that since it learned of Mr. Martinez's challenge to its 1994 actions only in Mr. Martinez's reply brief to his cross-motion for summary judgment on the issue of bad faith, it was at a disadvantage in presenting its side of the story to the Court. Remarkably, despite the ready availability of case law on the issue of reconsideration in light of newly presented evidence, neither Allstate's brief-in-chief nor its reply cites a single legal authority to support its request for reconsideration.

Mr. Martinez has not directly challenged Allstate's representation that error led it to overlook X-5045 in its bad faith summary judgment motion. Rather, Mr. Martinez points out that one of Allstate's key witnesses did not disclose the existence of that document and that Allstate did not make one of its experts, the late Justice Stanley Frost, aware of the existence of that document. Mr. Martinez also maintains that faced with repeated requests during discovery for disclosure of what Allstate sent its insureds in 1994 along with AU2207-1, Allstate consistently refused to clarify whether AU2207-1 was the sole document it sent its insureds at renewal time.[1] Finally, Mr. Martinez argues that even if the Court were to reconsider its ruling on bad faith in light of X-5045, it should still find that Allstate acted in bad faith in 1994.

---

[1] The issue of what Allstate sent its insureds in 1994 was a point of contention during discovery. This Court was called upon, in objections to the magistrate's order, to enter the fray. In its June 10 opinion and order, the Court resolved the controversy in Mr. Martinez's favor, by ordering Allstate to fully answer Interrogatory 21, which asked Allstate to identify and describe all communications it sent its insureds in September, 1994 in addition to the AU2207-1 amendatory endorsement.

**Discussion**

The Court begins its discussion by noting that while Allstate has premised its motion on Rules 59 and 60, Rule 59(e) provides the appropriate guidance in this case. The Tenth Circuit has clearly stated that "regardless of how styled, a motion questioning the correctness of a judgment and timely made within ten days thereof will be treated under Rule 59(e)." *Dalton v. First Interstate Bank*, 863 F.2d 702, 703 (10th Cir.1988), *superseded by rule on other grounds as stated in Grantham v. Ohio Cas. Co.*, 97 F.3d 434 (10th Cir. 1996); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991); *Phelps v. Hamilton*, 122 F.3d 1309, 1323-24 (10th Cir. 1997). The timeliness of Allstate's action is not in dispute. Rule 59(e), therefore, controls.

A court may grant a Rule 59(e) motion where a movant demonstrates "an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir.1995). Allstate does not argue, as it cannot, that it meets either of the first two requirements. Rather, Allstate implicitly rests its motion on the argument that the Court's declining to reconsider its ruling would work a manifest injustice. Characterizing this ruling as "extremely significant," Allstate claims that the evidence it now has brought forth sheds an entirely new light on the bad faith issue, and that the Court's ruling should not be "based on an erroneous representation as to the record." Reply Memorandum in Support of Allstate's Motion to Reconsider, Alter or Amend the Judgment and/or for Relief From Judgment at 1.

Looking in part to the history of how Allstate presented its opposition to the bad faith claim, the Court concludes that its ruling should stand. In this classic example of the conflict between two imperatives, the need for finality in judicial decisions and the need to render just

4

decisions based on all the facts, Allstate cannot now upset an adverse ruling by bringing forth evidence that it previously should have mentioned to the Court and had more than ample time and opportunity to produce.  <u>In addition, Allstate has not sufficiently explained the reasons for counsel error or why Allstate itself, as a Defendant, failed on its own to realize the importance of the lapse in presentation of evidence.  Therefore, in balancing the competing imperatives presented the Court cannot rule in Allstate's favor</u>.

The long path that the bad faith claim has taken to reach adjudication has allowed Allstate more than a sufficient opportunity to fully present its defense to Plaintiffs' allegations.  Mr. Martinez filed his original complaint in state court on June 26, 1996.  Service of process occurred on July 1, 1996, to the Superintendent of Insurance, who sent Allstate a letter that same day.  Exhibit A to Notice of Removal [Doc. No. 1].  Paragraphs 46 and 47 in Count III of the original complaint clearly asserted a bad faith claim against Allstate with respect to the 1994 renewal of the Martinez policy and Allstate's taking away stacked coverage.  Allstate has been on notice since early July, 1996, then, that it needed to defend against a bad faith allegation.

Moreover, Mr. Martinez postured this case as a class action when he filed his complaint; Allstate also has been on notice from the start that this case had the potential for large damages. Indeed, Allstate has defended vigorously and thoroughly.  One of its first acts was to file a motion to transfer this case to Judge Hansen, to strike class allegations, and to stay discovery.  The discovery in this case has been contentious, with the magistrate addressing numerous motions to compel and this Court ruling on several objections to the magistrate's orders.  Allstate has litigated this case with an effort commensurate with its importance.

More recently, the parties engaged in dispositive motion practice that, like the discovery

practice, left no stone unturned. On May 13, 1998, Allstate served a comprehensive motion for summary judgment that addressed the issues of bad faith, stacking of uninsured motorist coverage, stacking of medical payments coverage, negligence, and intentional infliction of emotional distress. Mr. Martinez filed cross motions for summary judgment on the issues of bad faith, stacking of uninsured motorist coverage, and stacking of medical payments coverage. Although Allstate incurred adverse rulings from this Court, Allstate was partly successful in its motion, and saw the claims of negligence and intentional infliction of emotional distress dismissed.

The cross motions on the issue of bad faith fully explored the facts and the law surrounding Mr. Martinez's claim. In a brief supporting its motion, Allstate first asserted that it did not frivolously refuse to pay Mr. Martinez's claim, and argued that the law in New Mexico was evolving to the point where, under certain circumstances, an insurer could properly issue uninsured motorist coverage that is immune to stacking. Finally, Allstate asserted that its expert, Justice Frost, who authored the *Stone* opinion, agreed that Allstate's position with respect to the Martinez claim was justifiable. In its reply, Allstate once again argued that New Mexico law allowed an insurer to validly preclude stacking, and reiterated that since reasonable minds can differ on the applicability of stacking to a policy, it had not acted in bad faith.

Mr. Martinez's brief in support of its motion for summary judgment expressly alerted Allstate to the argument that Allstate unilaterally decided, without properly informing its insureds, to take away stacking at policy renewal time in 1994. *See* Plaintiff's Brief in Support of his Cross-Motion for Summary Judgment on the Issue of Bad Faith at 16-17 [Doc. No. 108]. The brief is replete with repeated assertions that

> when Allstate tried to take away stacking after September 23, 1994,

6

> Allstate failed to clearly or conspicuously explain to its insureds that Allstate intended to take away stacking, reduce its insured's coverage and that insureds should keep that significant loss of coverage in mind before deciding to renew their Allstate policy.

*Id.* at 19.

It cannot be plainer, then, that one of Mr. Martinez's arguments was the failure of Allstate, in 1994, to consider its insureds' interests equally with its own.

Allstate's response brief did not bring a frontal attack to the challenge Mr. Martinez had set out. In its background section, Allstate first argued that it abundantly informed its insureds of its anti-stacking position in 1990.[2] In its argument section, Allstate elaborated on the steps it took in 1990 to properly inform its insureds of reduced coverage. Allstate <u>apportioned</u> little space, however, to explaining the information it sent its insureds in 1994, and then only mentioned AU2207-1. Allstate devoted the rest of its response to an argument focusing on its premium structure.

Mr. Martinez's reply, once again, argued that "Allstate [d]eliberately [w]ithheld [i]nformation from its [i]nsureds [w]hen it [r]enewed [t]heir [p]olicies after September 23, 1994." Reply at 4. Mr. Martinez's reply, concentrating in great part on this single argument, stressed that while Allstate fully explained policy changes in 1989-90, it failed to do so in 1994, and expressly compared the explanations Allstate sent out in 1989 with the lack of explanation available in 1994. There can be no doubt, then, that Allstate, in addition to being on notice since 1996 that its bad faith was an issue in the litigation, unquestionably should have realized that Mr. Martinez was challenging its actions during the 1994 renewal process. There is little merit to

---

[2] In its June 10 opinion, the Court implicitly agreed with Allstate, but held that its 1990 efforts aimed at informing its insureds had no effect following *Stone*.

Allstate's argument that it learned for the first time in Mr. Martinez's reply brief of the controversy surrounding its 1994 dissemination of information, or lack thereof.

Even assuming that Allstate only received clear notice of Mr. Martinez's argument on July 30, 1998, the day Mr. Martinez served his reply and filed the motion packet, the Court cannot conclude that Allstate was unfairly prejudiced. Allstate did not seek to file a surreply to Mr. Martinez's motion, despite the availability of this procedural device. *See* D.N.M. LR.-Civ. 7.6(b). Allstate has not been shy in the past with respect to seeking, and obtaining, leave to file a surreply. It requested such leave without opposition from Mr. Martinez, and received it when Mr. Martinez sought to strike the testimony of the late Justice Frost. In addition, the Court did not hand down its decision on the dispositive motions until June 10, 1999, more than ten months after the parties completed briefing on the bad faith issue. Had Allstate desired, then, it had both the knowledge and opportunity to present additional evidence on the issue of its communications in 1994 with its insureds and to address the pointed argument that it failed to properly inform its insureds of its attempt to reinstate its anti-stacking provisions following *Stone*.

Allstate cannot escape the general rule that "[w]here evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985); *see also Servants of the Paraclete v. Great American Ins. Co.*, 866 F. Supp. 1560, 1581 (D. N.M. 1994); *Tischio v. Bontex, Inc.*, 16 F. Supp.2d 511, 532 (D. N.J. 1998); Moore's Federal Practice § 59.30[6] (1999). Indeed, "[a] party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Cross Timbers Oil Co v. Rosel Energy, Inc.*, 168 F.R.D. 649, 650 (D. Kan. 1996). More recently a District of Kansas court reiterated:

8

> motions to alter or amend judgment are regarded with disfavor and
> generally granted only if the court has obviously misapprehended a party's
> position or the facts... Even assuming [that a] document has some
> evidentiary value, the court need not consider it because plaintiff has failed
> to show that it was unavailable at the time he was required to file his
> response.

*Gorelick v. Dept. of the Treasury*, 1998 WL 472647 at *1 (D. Kan. 1998) (unpublished) (citations omitted).

This Court is aware of one case on point addressing the submission, on a motion for reconsideration, of documentation that was previously available but not timely submitted due to attorney negligence. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds*, *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 n. 14 (5th Cir.1994) (en banc). The *Lavespere* panel, applying Rule 59, fashioned a four part test for use in just such circumstances. The court stated that

> [i]n any case in which a party seeks to upset a summary judgment on the
> basis of evidence she failed to introduce on time, two important judicial
> imperatives clash: the need to bring litigation to an end and the need to
> render just decisions on the basis of all the facts. The task of the district
> court in such a case is to strike the proper balance between these
> competing interests. In order to do this, the court should consider, among
> other things, the reasons for the moving party's default, the importance of
> the omitted evidence to the moving party's case, whether the evidence was
> available to the non-movant before she responded to the summary
> judgment motion, and the likelihood that the nonmoving party will suffer
> unfair prejudice if the case is reopened.

*Id.* at 174 (citations omitted).

Ruling that negligence, and not tactical consideration, was the reason for the omitted deposition, the Court found the missing deposition to be of critical importance to plaintiff's product liability case because it contained the only evidence concerning defective design and causation. Since the

9

motion for reconsideration came only eight days after the summary judgment ruling, the court found no prejudice to the nonmoving party by re-opening the case. The court qualified its holding, however, by stating that its "decision means only that a district court faced with circumstances analogous to those present here *may* reopen the case; it does not mean that a district court faced with such circumstances *should* or *must* do so." *Id.* at 175 (emphasis in original).

Nonetheless, in this circuit the Court is not free to apply the *Lavespere* test. In *Buell v. Security Gen. Life Ins. Co.*, 987 F.2d 1467 (10th Cir. 1993), the lower court had applied *Lavespere* to decide whether it should reconsider a grant of summary judgment after the plaintiff presented late-offered evidence in a Rule 59(e) motion. *Id.* at 1472. The *Buell* court implicitly rejected the *Lavespere* test, noting:

> when supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered and if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.

*Id., citing Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992).

None of these factors is present here. Pursuant to *Buell*, this Court cannot grant Allstate's motion for reconsideration.

The Court also is aware that the Tenth Circuit has, in an unpublished disposition from a different panel, used the *Lavespere* standard in a motion for reconsideration. The court in *Hanson v. City of Oklahoma City*, 1994 WL 551336 (10th Cir. 1994), cited the *Lavespere* factors in analyzing whether, on a motion to reconsider the granting of default judgment due to

untimeliness using the Rule 59(e) standard, the trial court abused its discretion. *Id.*, 1994 WL 551336 at **3. However, under our system of jurisprudence a published opinion, rather than an unpublished decision, controls.

In balancing the need for finality with the need to render a just decision based on all the facts, the Court in this instance follows circuit precedent and decides in favor of finality. Moreover, to allow Allstate, after a full and fair litigation of the bad faith issue, to succeed in its motion would be to invite the multiplication of instances where parties would seek to upset a judgment with late-presented evidence. The Court declines to open the door to this possibility.

Finally, the Court is troubled both by Allstate's counsel paucity of explanation for her error and by the failure of Allstate's representatives to have brought this lapse to the fore in a timely manner. Counsel has termed the oversight of X-5045 "a massive mistake." Memorandum in Support of Allstate's Motion to Reconsider, Alter or Amend Judgment and/or for Relief from Judgment at 4. Yet in light of this mistake, counsel for Allstate only states that the failure to locate this document, despite its twice being produced for Plaintiffs,[3] for use in the dispositive motions was inadvertence. *Id.* at 3. Counsel gives no further explanation.

The issue of what documents Allstate sent out in 1994 at renewal time occupied a central position in the bad faith argument. Although not the only issue, it nevertheless concerned Mr. Martinez and was the subject, through Interrogatory 21, of a contentious discovery dispute requiring a ruling of this Court. Allstate's counsel could not but know, then, that the existence of

---

[3] Plaintiffs allege that the document was buried in 20,000 other pages, while Allstate maintains that the production which included X-5045 only amounted to 2,435 pages. Regardless of the actual number of pages in the production, the Court ruled on June 10 that Allstate had an obligation, pursuant to Rule 33(d), to specifically identify the document.

11

X-5045 was relevant to her client's case.  In light of the prominence which Allstate now places on the document, the Court is troubled by counsel's failure to elaborate on the nature of her mistake and to provide more details in a situation whose outcome in part turns on credibility.

In addition, the Court is left in the dark with respect to Allstate's management of its defense.  Allstate's expert, Justice Frost, unequivocally stated in his deposition on July 16, 1998, that AU2207-1 was the "only document I know actually informing with regard to the change in the stacking policy."  Frost Deposition at 34.  To a lesser but still important extent, Allstate adjuster Ms. Susan Cary strongly implied that no documentation existed other than AU2207-1 when she testified in her deposition that in deciding stacking issues, she only relied on AU2207-1 and letters from Allstate's attorney, but no other records or writings.  Cary Deposition at 65.  That Allstate did not understand the relevance of X-5045, correct its employee's and expert's mis-impressions, or participate with its counsel in a way that would have prevented what counsel now argues is a "massive mistake" is baffling to this Court.

In balancing the need for finality with the need to render a just decision based on all the facts, the Court in this instance follows circuit precedent and decides in favor of finality.  Moreover, to allow Allstate, after a full and fair litigation of the bad faith issue, to succeed in its motion would be to invite the multiplication of instances where parties would seek to upset a judgment with late-presented evidence.  The Court declines to open the door to this possibility.

THEREFORE,

IT IS HEREBY ORDERED that Defendant Allstate Insurance Company's Motion to Reconsider, Alter or Amend Judgment and/or for Relief From Judgment, filed July 20, 1999 **[Doc. No. 150]** be, and hereby is, **denied**.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

Counsel for Plaintiff and for the Class

Janet Santillanes
James T. Roach
David Archuleta

Counsel for Defendant

Lisa Mann
Jennifer A. Noya